# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

ELIZABETH FISHER      )     CASE NO. 5:11-cv-00034-RLV-DSC
                          )
      Plaintiff,      )
                          )     **PLAINTIFF'S RESPONSE IN**
vs.                  )     **OPPOSITION TO DEFENDANT'S**
                          )     **MOTION TO DISMISS**
BERNHARDT AND STRAWSER, P.A.  )
                          )
      Defendant.     )
_____ )

     Plaintiff, Elizabeth Fisher, by and through her counsel undersigned, hereby submits this memorandum of law in opposition to Defendant, Bernhardt and Strawser, P.A.'s motion to dismiss. In support thereof, Plaintiff respectfully states as follows:

## I.    INTRODUCTION.

     The federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), prohibits debt collectors from engaging in abusive, deceptive, and unfair practices in connection with the collection of consumer debts. Because the Act is remedial in nature, it is interpreted liberally in order to protect the least sophisticated consumer.

     The FDCPA, among other things, requires the debt collector to provide the consumer with notice of her right to dispute the debt within 30 days of the debt collector's initial communication. By demanding payment and threatening legal action within the 30-day period, Defendant overshadowed the statutorily required notice, in violation of 15 U.S.C. § 1692g(b). In addition, Defendant violated the FDCPA at section 1692c(a)(2), by communicating directly with the Plaintiff in connection with the collection of a debt, when it knew Plaintiff was represented by counsel with respect to such debt.

1

As discussed more fully below, Plaintiff's complaint was pleaded with sufficient specificity to survive a Rule 12(b)(6) motion for failure to state a claim, and Defendant's motion must be denied.

## II.    STATEMENT OF PROCEDURE.

On March 18, 2011, Plaintiff filed her original complaint, alleging Defendant violated the FDCPA at 15 U.S.C. § 1692g(b) and § 1692c(a)(2).  (Doc. 1).  On May 10, 2011, Defendant filed the instant motion to dismiss Plaintiff's complaint and supporting memorandum of law. (Doc. 5; Doc. 6).

## III.   STATEMENT OF FACTS.

### A.    The Parties.

Plaintiff is a natural person residing in Wilkes County.   (Doc. 1, ¶4).   Plaintiff is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than Defendant.  (Doc. 1, ¶8).  Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes and Plaintiff incurred the obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant.  (Doc. 1, ¶9).  Plaintiff is a consumer as defined by 15 U.S.C. § 1692a(3).  (Doc. 1, ¶5).

Defendant is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).  (Doc. 1, ¶6).  Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, and/or regularly

2

collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another. (Doc. 1, ¶10). Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6). (Doc. 1, ¶7).

### B. Defendant's Initial Collection Letters To Plaintiff.

In connection with the collection of a debt,[1] Defendant mailed two initial collection letters to Plaintiff dated April 21, 2010 and May 12, 2010. (Doc. 1, ¶11; Doc. 1-1). Defendant overshadowed the disclosures required by 15 U.S.C. § 1692g(a) by demanding payment within the thirty-day dispute period. (Doc. 1, ¶11; Doc. 1-1). Specifically, Defendant's April 21, 2010 collection letter stated, in relevant part:

> I have been retained by GE FINANCE-MONEY BANK in regards to the balance you owe them on your account. Your contract with GE FINANCE-MONEY BANK provides for payment of reasonable attorney fees if legal action is required to collect the balance due on your account. The attorney fee provision is authorized by North Carolina General Statutes G.S. 6-21.2. Please be advised that if the outstanding balance due my client, $1,665.82, is not received from you in my office within 30 days of the receipt of this letter, my client may seek to enforce the attorney fee provision of your GE FINANCE-MONEY BANK contract, all as provided by G.S. 6-21.2. Your check or money order should be payable to GE FINANCE-MONEY BANK.

(Doc. 1-1).

Similarly, Defendant's May 12, 2010 collection letter stated, in relevant part:

> I have been retained by Citibank, South Dakota, N.A. in regard the balance you owe them on your account. Your contract with Citibank, South Dakota, N.A. provides for payment of reasonable attorney fees if legal action is required to collect the balance due on your account. The attorney fee provision is authorized by North Carolina General Statutes G.S. 6-21.2. Please be advised that if the outstanding balance due my client, $2,926.78, is not received from you in my office within 30 days of the receipt of this letter, my client may seek to enforce the attorney fee provision of your Citibank, South Dakota, N.A. contract, all as provided

---

[1] Defendant in fact sought to collect two separate debts from Plaintiff. (See Doc. 1-1). For purposes of this brief, use of the singular "debt" may refer to both alleged debts, unless the context requires otherwise.

by G.S. 6-21.2. Your check or money order should be payable to CITIBANK, SOUTH DAKOTA, N.A..

(Doc. 1-1).

### C.  Defendant's March 10, 2011 Correspondence To Plaintiff.

After Plaintiff received these letters, she retained the undersigned counsel and law firm, and sent Defendant notice of her representation on January 28, 2011. (Doc. 6-5). The notice stated: "Having been formally notified of our representation, we respectfully demand you not contact our client for any reason." (Doc. 6-5). Despite having received this written notice that Plaintiff was represented by an attorney, Defendant thereafter communicated with Plaintiff directly by sending her a letter dated March 10, 2011 in connection with the collection of a debt. (Doc. 1-2).

## IV.  STANDARD UNDER RULE 12(b)(6).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Id.* at 555. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In considering a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Well-pleaded allegations of fact and every inference fairly deducible therefrom are accepted as true for purposes of a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a

4

recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted); *see also Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000) ("Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, we assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations.").

## V. THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY CONSUMER, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.

The FDCPA is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq.* The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, both generally and in a specific list of disapproved practices, and prohibit harassing and abusive tactics, both generally and in a specific list of disapproved practices.

In enacting the FDCPA, Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b). It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using

5

abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Accordingly, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Simply, designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992); *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982).

## VI.    THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA is a strict liability statute. *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232 (5th Cir. 1997); *see also Irwin v. Mascott,* 112 F. Supp. 2d 937 (N.D. Cal. 2000); *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.,* 969 F. Supp. 609 (D. Nev.1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Turner v. J.V.D.B. &*

6

*Associates, Inc.,* 330 F.3d 991, 995 (7th Cir. 2003) (holding unintentional misrepresentation that debtor was obligated to pay a debt discharged in bankruptcy violated the FDCPA); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

Although Plaintiff has alleged multiple violations of the FDCPA, detailed herein, a single violation is enough to establish civil liability under the FDCPA. *Taylor*, 103 F.3d at 1238.

## VII. THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER-DEBTORS.

The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the consumer. *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002); *see, e.g., Plummer v. Gordon*, 193 F. Supp. 2d 460, 463 (D. Conn. 2002); *Ross v. Commercial Fin. Servs.*, 31 F. Supp. 2d 1077, 1079 (N.D. Ill. 1999); *Harrison v. NBD, Inc.*, 968 F. Supp. 837 (E.D.N.Y. 1997).

Plaintiff is a consumer-debtor; the very person the FDCPA was enacted to protect.

## VIII. THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.

The FDCPA is to be interpreted in accordance with the "least sophisticated" or "unsophisticated" consumer standard. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) (adopting the "least sophisticated" consumer standard); *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991) (noting that statutory notice under FDCPA is to be interpreted from

7

perspective of "least sophisticated debtor" standard); *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988) (holding that provisions of the FDCPA are to be judged under the "least sophisticated debtor" standard); *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254 (7th Cir. 1994) (using the "unsophisticated consumer," rather than the "least sophisticated consumer," in order to protect consumers who are uninformed, naive or trusting, while admitting objective element of reasonableness). The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive debt collection practices, and protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

## IX. PLAINTIFF IS A CONSUMER, DEFENDANT IS A DEBT COLLECTOR, AND THE SUBJECT OBLIGATION IS A DEBT, AS DEFINED BY THE FDCPA.

### A. Plaintiff Is A "Consumer" As Defined By The FDCPA.

"Consumer" is defined by the FDCPA as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C § 1692a(3). In this matter, Plaintiff is a natural person obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due a creditor other than Defendant. (Doc. 1, ¶8). Plaintiff is therefore a person obligated, or alleged to be obligated, to pay a debt, and as such constitutes a "consumer" as defined by the FDCPA. (Doc. 1, ¶5).

### B. Defendant Is A "Debt Collector" As Defined By The FDCPA.

"Debt collector" is defined by the FDCPA as "any person who uses any instrumentality of interstate commerce in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C § 1692a(6). For reason that instrumentalities of

interstate commerce include telephone and the mails, virtually all commercial collection activities fall within the realm of the FDCPA. The United States Supreme Court has stated "[t]he Act's definition of the term 'debt collector' includes a person 'who regularly collects or attempts to collect, directly or indirectly, debt owed [to] … another.' " *Heintz v. Jenkins*, 514 U.S. 291 (1995).

In the instant matter, Defendant attempted to collect from Plaintiff a debt allegedly owed a third party creditor. (See Doc. 1; Doc. 1-1). Defendant utilized instrumentalities of interstate commerce, *i.e.* mailings, in effort to collect the subject debt. (See Doc. 1, ¶10; Doc. 1-1). Accordingly, and because Defendant attempted to collect a debt allegedly owed another, Defendant is a "debt collector" as defined by the FDCPA. (Doc. 1, ¶7).

### C.   Plaintiff's Alleged Obligation Is A "Debt" As Defined By The FDCPA.

"Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C § 1692a(5). In this case, Plaintiff's obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes and Plaintiff incurred the obligation, or alleged obligation, owed or due, or asserted to be owed or due a creditor other than Defendant. (Doc. 1, ¶9). Defendant attempted to collect a "debt" from Plaintiff as defined by the FDCPA. (Doc. 1, ¶6).

## X.   PLAINTIFF PROPERLY PLEADED A CAUSE OF ACTION AGAINST DEFENDANT.

### A.   Plaintiff Properly Alleges A Violation Of 15 U.S.C. § 1692g(b).

Congress included in the FDCPA debt validation provisions in order to guarantee that consumers would receive adequate notice of their legal rights.  See S. Rep. No. 382, 95th Cong., 1st Sess. 4, 8, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702.  Included among the rights the FDCPA requires debt collectors to disclose to the consumer in (or within five days of) its initial communication is that the consumer has thirty days after receipt of the initial notice to dispute the validity of the debt.  15 U.S.C. § 1692g(a)(3).

Section 1692g(b) of the FDCPA provides in part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector. . . .  **Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor**.

15 U.S.C. § 1692g(b) (emphasis added).

Therefore, a debt collector does not comply with section 1692g "merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor."  *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).  "[T]o be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency."  *Id.*; *see also Ost v. Collection Bureau, Inc.*, 493 F. Supp. 701 (D.N.D. 1980) (holding that

communication must not be designed to "evade the spirit of the notice statute, and mislead the debtor into disregarding the notice").

A notice of rights, when presented in conjunction with a contradictory demand, is not effectively communicated to the debtor. *See, e.g., Francis v. Synder*, 389 F. Supp. 2d 1034 (N.D. Ill. 2005) (holding that a letter to a consumer noting that collection efforts would be pursued unless the outstanding balance was paid, while at the same time allowing the consumer 30 days to dispute the validity of the debt, presented two statements that an unsophisticated consumer could reasonably find contradictory or confusing; thus violative of section 1692g). A collection letter, even should it track the statutory language of the FDCPA, "nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *Meselsohn v. Lerman*, 485 F. Supp. 2d 215 (E.D.N.Y. 2007). Language is "overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Russell v. Equifax A.R.S.,* 74 F.3d 30 (2d Cir. 1996) (holding such language present within a validation notice need not be "threatening" to violate the FDCPA). "Thus, a debt collector violates the Act if its communication is 'reasonably susceptible to an inaccurate reading' of the required message." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2d Cir. 2001).

While some courts have found whether a letter violates § 1692g(b) to be a question of law, others have found it to be a question of fact, especially in close cases. *See McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) (holding an inquiry under § 1692g "requires a fact-bound determination of how an unsophisticated consumer would perceive the letter."); *Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) ("Whether a given message is confusing is . . . a question of fact, not of law or logic. Similarly in the law of

11

trademarks, whether a mark, slogan, or trade dress is likely to confuse consumers about the source of the goods is a question of fact, not law."); *Blum v. Fisher and Fisher*, 961 F. Supp. 1218, 1225 (N.D. Ill. 1997) ("we conclude that whether the language at issue . . . sent mixed messages which would have confused an unsophisticated consumer is a question of fact that cannot be resolved on this motion for summary judgment."); *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1155 (E.D.N.Y. 1996) ("Although [debt collector's] allusions [to a law suit] may implicitly contradict the validation notice, the tentative manner with which Defendants make them does not rise to the level of explicit contradiction to warrant such a conclusion as a matter of law. . . . Nonetheless, such language could reasonably lead a jury to find that the least sophisticated consumer would be intimidated by the looming suit into foregoing their right to dispute the debt and/or force them to rush their response.").

### 1.    Defendant's Letters Demanded Payment.

Defendant's initial communication to collect a debt from Plaintiff was written on law firm letterhead and reads in part:

> I have been retained by GE FINANCE-MONEY BANK in regards to the balance you owe them on your account.  Your contract with GE FINANCE-MONEY BANK provides for payment of reasonable attorney fees **if legal action is required to collect the balance due on your account**.  The attorney fee provision is authorized by North Carolina General Statutes G.S. 6-21.2.  Please be advised that **if the outstanding balance due my client, $1,665.82, is not received from you in my office within 30 days of the receipt of this letter, my client may seek to enforce the attorney fee provision** of your GE FINANCE-MONEY BANK contract, all as provided by G.S. 6-21.2.  Your check or money order should be payable to GE FINANCE-MONEY BANK.

(Doc. 1-1) (emphasis added).[2]

---

[2] This excerpt is taken from Defendant's April 21, 2010 collection letter.  Defendant's May 12, 2010 collection letter contains identical language, save the name of the creditor and amount of debt.  (See Doc. 1-1).

To claim that Defendant's letter did not demand payment or threaten litigation, as Defendant contends, is to "ask this court to adopt a hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world." *U.S. v. National Financial Services, Inc.*, 98 F.3d 131, 138 (4th Cir. 1996) ("We decline to do so.").

The purpose of the collection letter is to extract payment from the Plaintiff, not to provide a public service and "simply advise Plaintiff of applicable law." (Doc. 6, at p. 5); *see id.* at 137 (4th Cir. 1996) ("While the defendants are literally correct, we do not believe that any consumer could reasonably believe that NFS intended to provide a public service by informing him about the basic functions and fee requirements of attorneys."). To this end, the top of each letter states the "Total Due" and the body of the letter pressures the consumer to pay that total amount. (See Doc. 1-1). To hold that the letter does not demand payment would be inconsistent with the Fourth Circuit's instruction that collection letters must interpreted as they would be perceived in the real world.

## 2. Defendant's Letters Threatened Litigation.

In addition, the language used in the letter threatens litigation. The collection letters are from an attorney and written on law firm letterhead. (See Doc. 1-1).

> A debt collection letter on an attorney's letterhead conveys authority. Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency. It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency. The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action.

*Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an attorney, knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the

13

heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.").

"In close cases, the fact that an attorney—as opposed to a debt collection service—sent the disputed letter 'may create a sliding-scale which increases the sensitivity of the debtor to language in the letter threatening litigation.' " *Herzlinger v. Nichter*, 2011 WL 1434609, at *6 (S.D.N.Y. Feb. 6, 2011) (quoting *Baptist v. Global Holding and Inv. Co.*, 2007 WL 1989450, at *4 (E.D.N.Y. July 9, 2007)); *see also Jenkins v. Union Corp.,* 999 F. Supp. 1120, 1137 (N.D. Ill. 1998) ("in cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney."). "Because to most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue," a letter signed by an attorney signals to the unsophisticated consumer that legal action is at hand. *United States v. National Fin. Servs.*, 98 F.3d 131, 136–37 (4th Cir. 1996).

As one district court explained:

> In the context of a consumer debt, a reasonable perception of consumers is that if a consumer debt is being handled on behalf of the lender by a law firm and if the amount of money that the law firm is seeking (or some lesser settlement amount) is not paid, then the lawyer(s) will use the legal process with which they are familiar and for the use of which they are specifically trained to obtain a mandatory order of payment, which order will be enforceable by penalties within the power of courts to impose. **The implication that a communication to a consumer concerning a debt is from an attorney has a particular well-known and well-understood effect.**

*Lesher v. Law Office of Mitchell N. Kay, PC*, 724 F. Supp. 2d 503, 509 (M.D. Pa. 2010) (emphasis added).

In its collection letters Defendant makes repeated references to the "North Carolina General Statutes," and "legal action" to "enforce the attorney fee provision" of a "contract." (Doc. 1-1).  As the Fourth Circuit recognized, using such "language conveys authority, instills

14

fear in the debtor, and escalates the consequences." *U.S. v. National Financial Services, Inc.*, 98 F.3d at 137.

The reasonable implication drawn from the language used is that if payment is not received, "legal action" will be taken to "enforce the attorney fee provision" by judicial means. "[A]lthough a debt collector has the right to sue a consumer during the statutory thirty-day period, it must tread carefully when leveraging this right in the initial collection letter to extract payment so as not to overshadow or contradict the consumer's validation rights." *Garcia-Contreras v. Brock & Scott, PLLC*, --- F.Supp.2d ----, 2011 WL 1238822, at *11 (M.D.N.C. Mar. 31, 2011).

### 3. Language Contained In Defendant's Letters Overshadows And Conflicts With Plaintiff's Verification Rights Because The Least Sophisticated Consumer Would Believe That Any Course Of Action Other Than Payment Within 30 Days Would Result In A Lawsuit.

The least sophisticated consumer, having reviewed Defendant's letter(s), could reasonably believe, notwithstanding any appropriate validation notice, that if Defendant did not receive from Plaintiff payment in full, that Plaintiff would forego her opportunity to avoid "legal action" and "enforce[ment]" of the attorney fee provision – i.e. a lawsuit. Congress designed section 1692g to provide alleged debtors with 30 days to question and respond to the initial communication of a debt collector. See 15 U.S.C § 1692g. Defendant's language represents an attempt to evade the spirit of the notice statute and mislead the consumer into disregarding the required debt validation notice. Without more, there exists a reasonable probability that the least sophisticated debtor, faced with a demand for payment, coupled with a threat that a lawyer has "been retained" "if legal action is required" "to enforce the attorney fee provision" of a contract, "all as provided by" statute, would be induced to overlook her right to take 30 days to dispute the debt.

15

Defendant's letter demands that payment be "received from [Plaintiff] in [Defendant's] office within 30 days of the receipt of this letter." (Doc. 1-1). Demanding payment "within" 30 days, is inconsistent with Plaintiff's right to take 30 days to dispute the debt. The dictionary defines "within" as "before (a period of time) has elapsed." Dictionary.com, "within," in Collins English Dictionary - Complete & Unabridged 10th Edition, *available at* http://dictionary.reference.com/browse/within. Even if "within" 30 days could be said to be the same period of time as the FDCPA permits, the demand required the payment to be *received* in Defendant's office within 30 days – meaning that Plaintiff would have had to make the decision to send payment well before the expiration of the 30 day period, to ensure the payment reached Defendant's office within the 30 day period. (Discussed *infra*).

Defendant cites *McStay v. IC System, Inc.* for the proposition that no overshadowing may be found if the time frame in which to make payment expires concurrently with the 30-day period. (See Doc. 6, at 6). However, this misstates that case's holding, as the language in the collection letter at issue threatened the consumer with consequences "if **after** 30 days your account is not paid in full." *McStay v. IC System, Inc.*, 174 F. Supp. 2d 42, 45 (S.D.N.Y. 2001) (emphasis added). Instead, the opinion focused primarily on whether the "30 days" referenced in the letter began from the date the letter was sent or was received – not an issue in this matter. *Id.*

In contrast, courts have held that a demand for payment to be received within the 30 day period would confuse the least sophisticated consumer and violates the FDCPA. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) ("Defendant argues that the letter contains no contradiction because plaintiff is given the same amount of time to pay as to contest the debt (i.e., 'within thirty (30) days'). But the letter required that plaintiff's payment be *received* within the 30-day period, thus requiring plaintiff to mail the payment prior to the

thirtieth day to comply. In contrast, subparagraphs (3) and (4) of § 1692g(a) give the consumer thirty days after receipt of the notice to dispute the validity of a debt.") (emphasis in original); *Swift v. Maximus, Inc.*, 2004 WL 1576618, at *4 (E.D.N.Y. July 15, 2004) ("the notice states that payment must be *received* within the thirty day limit. Even the least-sophisticated consumer would calculate that payment must be mailed in advance of a deadline in order to be received by that deadline.") (emphasis in original).

Stated otherwise, Defendant, through its collection letters, presented Plaintiff with mutually exclusive opportunities: (1) Plaintiff was entitled to 30 days from receipt of Defendant's letter to dispute the validity of the subject debt, or any part of it, but (2) if Plaintiff chose to exercise that right, the opportunity to avoid the legal consequences threatened by Defendant could expire. The least sophisticated consumer, and quite probably even the average consumer, having reviewed Defendant's letters, could be led to the conclusion that she must ignore her right to take 30 days to verify her debt and act sooner or she could subject herself to the threatened "legal action". The demand for payment and threat of a lawsuit presented at the top of Defendant's letters overshadows and conflicts with the validation notice found at the bottom of the letters. *See, e.g., Larsen v. JBC Legal Group, P.C.*, 533 F. Supp. 2d 290, 306-07 (E.D.N.Y. 2008) (holding a demand for payment within the 30 day period statutorily afforded to dispute a debt implies that plaintiff has less than the statutorily required time period provided for under 15 U.S.C. § 1692g(a)(3) to dispute the debt, and accordingly overshadows and conflicts with any proper validation notice).[3] Important, "a debt collector violates the Act if its

---

[3] The Ninth Circuit has found language much more discreet than that utilized by Defendant in the instant matter violated section 1692g. In *Swanson v. Southern Oregon Credit Service, Inc.*, the Ninth Circuit, in describing the language employed by a debt collector's letter as "misleading in both form and content," stated: "The prominence and message of the 'master file' and 'most valuable asset' language, lead the least sophisticated debtor, and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a

communication is 'reasonably susceptible to an inaccurate reading' of the required message." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2d Cir. 2001).

That Defendant takes time in its brief to explain the relationship between the demand for payment and the 30-day time period afforded the Plaintiff to dispute the debt is irrelevant, because this explanation must be provided to the consumer in the letter, so as to avoid confusion. *See Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

One district court sitting in North Carolina recently warned against the very conduct in which Defendant partook. In *Garcia-Contreras v. Brock & Scott, PLLC*, the court first noted the Fourth Circuit's caution that "[t]here are numerous and ingenious ways of circumventing § 1692g under a cover of a technical compliance." --- F.Supp.2d ----, 2011 WL 1238822, at *10 (M.D.N.C. 2011) (quoting *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 485 (4th Cir. 1991). The court found that while "nothing in [Defendant's] letter expressly demands payment within thirty days . . . . the letter's threats can reasonably be interpreted by the least sophisticated consumer as a demand for immediate payment." *Id.* ("The letter does more than simply inform the consumer . . . ."). "**Because the letter lacks any explanation** of how the threats pressuring the consumer for immediate payment are consistent with the validation notice, the threats overshadow and contradict the notice, which therefore has not been effectively conveyed." *Id.* (emphasis added).

Similarly, in this case, because Defendant failed to explain in its collection letters to

---

deadbeat in the 'master file' of his local collection agency and will, accordingly, lose his 'most valuable asset,' his good credit rating." *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988).

Plaintiff how its demand for payment within the 30-day period was consistent with Plaintiff's validation rights, Defendant violated the FDCPA.

### B. Plaintiff Properly Alleges A Violation Of 15 U.S.C. § 1692c(a)(2).

The FDCPA prohibits a debt collector from communicating directly with the consumer "in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2).

### 1. Defendant Knew Plaintiff Was Represented With Respect To The Debts At Issue In This Matter.

In arguing that Plaintiff was not represented "with respect to such debt," it is the Defendant who misconstrues § 1692c. As Plaintiff's counsel's notice letter indicates, Plaintiff was represented by counsel regarding the Defendant's collection of the debts at issue in this matter. Defendant understood this, as it states: "it is clear [Plaintiff's counsel] was representing Plaintiff against [Defendant] with regard to the latter's handling of the debt and the alleged FDCPA violations." (Doc. 6, at 7) (emphasis removed).

In this instance, there are two debts at issue – one allegedly owed to GE Finance-Money Bank and one allegedly owed to Citibank. These are the only debts at issue, and as evidenced by Plaintiff's notice letter and instant complaint, Plaintiff is represented by counsel with respect to these debts. There are no other debts about which Defendant might have contacted Plaintiff, at least none of which Plaintiff's counsel is aware. Were there such *other* debts, Defendant would not violate § 1692c if it contacted Plaintiff about *such* debts, because such debts are separate and distinct from those the collection of which form the basis of Plaintiff's complaint. This is evidenced from the plain language of § 1692c, which applies to communications made "in connection with the collection of any debt" – and "such debt" references the antecedent "any debt" used in the statute.

Knowledge of representation "with respect to" the debt may be imparted by virtue of representation in a lawsuit regarding improper collection practices with respect to the same debt. As one court explained:

> [P]laintiff argues that defendants improperly communicated directly with her, having received formal notification that she was represented by counsel because she had filed a lawsuit against defendants **for their collection efforts** in 2002. Under 15 U.S.C. § 1692c(a)(2), a debt collector "may not communicate with a consumer in connection with the collection of any debt ... if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer." As the Federal Trade Commission commentary on this provision explains, "[i]f a debt collector learns that a consumer is represented by an attorney **in connection with the debt**, even if not formally notified of this fact, the debt collector must contact only the attorney and must not contact the debtor." Federal Trade Commission, Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50104 (1988).
>
> **Goins' 2002 lawsuit concerned debt collection activity regarding** a $402.78 debt owed to Wilson Suede and Leather, **a debt which also formed a partial basis for the amount claimed in the February 17, 2003 letter**. . . . As defendants do not dispute that the 2002 lawsuit gave them sufficient notice that plaintiff was represented by counsel **with respect to the debt on which they sought to collect** through the February 17, 2003 letter, or that the February 17, 2003 letter was sent directly to plaintiff, they are liable under § 1692c(a)(2).

*Goins v. JBC & Associates, P.C.*, 352 F. Supp. 2d 262, 272-73 (D. Conn. 2005) (emphasis added).

Defendant does not dispute having received Plaintiff's January 28, 2011 notice of representation.[4]  Because Defendant knew Plaintiff was represented with respect to the debts at issue in this matter, it violated § 1692c(a)(2) by contacting her directly in connection with the collection of such debts.

---

[4] Even if it did, that would not be appropriate to consider at this motion to dismiss stage, where the Court must accept as true all facts as alleged in Plaintiff's complaint, and all reasonable inferences therefrom.

### 2. Defendant Contacted Plaintiff Directly "In Connection With The Collection" Of The Debt.

Whether a communication is "in connection with the collection of any debt" is a question of fact – "to be proven like any other fact." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010) ("Here, the issue was raised at the pleading stage, and we need only determine whether Gburek's allegations–including the contents of the letters she attached to her complaint–are sufficient to survive Litton's motion to dismiss.").

In this case, after Defendant received notice that Plaintiff was represented by counsel with respect to the debts at issue, Defendant directly communicated with Plaintiff via mail in a letter dated March 10, 2011. (Doc. 1-2). As Defendant concedes, the letter was sent in connection with the Defendant's lawsuit against Plaintiff to collect the underlying debt at issue in this matter. Though the letter does not contain an explicit demand for payment, that is not necessary for a communication to be "in connection with" the collection of a debt. *Gburek*, 614 F.3d at 385. Other important factors to consider are the nature of the relationship between the parties and the purpose of the communication. *Id.*

As a debt collector, Defendant has no other reason to contact Plaintiff, a purported debtor, but to collect the debt for which it was retained by its client to collect from Plaintiff. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009) ("The only relationship the defendants had with the plaintiffs arose out of Triumph Partnerships' ownership of the plaintiffs' defaulted debt."). The lawsuit was a means to collect the debt, and any communication from Defendant to Plaintiff regarding the collection lawsuit, be it about overdue discovery responses or otherwise, would serve only to advance the Defendant's interest in debt collection. In short, Defendant would not have sent its March 10, 2011 letter to Plaintiff had it not been attempting to collect a debt. *See id.* ("the defendants would not have sent this [communication] to the

plaintiffs if they had not been attempting to collect a debt.").

In addition, the purpose of the communication was to collect a debt. This is evidenced by the Defendant's language used in the letter itself, which states: "The purpose of this communication is to collect a debt." (Doc. 1-2). To argue now that the letter did not concern any debt is disingenuous.

Defendant's argument that it was "required" to send this communication is equally unavailing. The North Carolina Rules of Civil Procedure provide that a party to a discovery dispute "**may** apply for an order compelling discovery . . . ." N.C. R. Civ. P. 37(a) (emphasis added). Defendant was under no obligation to file a motion to compel, and therefore was under no obligation to send Plaintiff this communication.[5] In choosing to do so, it violated the FDCPA. That Defendant complied with state procedural rules is of no moment, as it is also required to comply with the FDCPA, as the Ninth Circuit recently explained:

> [The debt collector] asserts that if its [discovery tactics] complied with the applicable state rules, they ought not subject it to liability under the FDCPA. However, Congress enacted the FDCPA expressly because prior laws for redressing "abusive, deceptive, and unfair debt collection practices" were "inadequate to protect consumers." 15 U.S.C. § 1692(a), (b). The statute preempts state laws "to the extent that those laws are inconsistent with any provision of [the FDCPA]." 15 U.S.C. § 1692n.

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 951 (9th Cir. 2011).

## XI. CONCLUSION.

Plaintiff's allegations, accepted as true for the purposes of a motion to dismiss, and all reasonable inferences therefrom, sufficiently state a cause of action under the FDCPA. By demanding payment within the 30-day period in which Plaintiff is statutorily afforded to dispute the validity of the debt, Defendant violated 15 U.S.C. § 1692g(b). By communicating directly

---

[5] Still, Defendant was not without recourse regarding its discovery concerns. It could have requested the state court to exempt it from the conference requirement under the circumstances.

with Plaintiff in connection with the collection of a debt, when it knew that Plaintiff was represented by an attorney with respect to the same, Defendant violated 15 U.S.C. § 1692c(a)(2).

WHEREFORE, Plaintiff respectfully requests this Court to deny Defendant's motion to dismiss in its entirety.

DATED this 24th day of May, 2011.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Holly E. Dowd
Holly E. Dowd (N.C. Bar No. 37533)
WEISBERG & MEYERS, LLC
409A Wakefield Dr.
Charlotte, NC 28209
(888) 595-9111 ext. 260
(866) 565-1327 (fax)
hdowd@attorneysforconsumers.com
ATTORNEYS FOR PLAINTIFF

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2011, I electronically filed the foregoing document with the clerk of the U.S. District Court for the Western District of North Carolina, Statesville Division using the electronic case filing system of the court, which shall send notification of such filing to the following:

Joshua B. Durham
One Wells Fargo Center
301 S. College Street, Suite 2300
Charlotte, NC 28202-4010
jdurham@poynerspruill.com

<div style="margin-left: 40%;">

/s/ Holly E. Dowd
Holly E. Dowd

</div>

23