UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| ELIZABETH FISHER,<br><br>                Plaintiff,<br><br>vs.<br><br>BERNHARDT AND STRAWSER, P.A.,<br><br>                Defendant. | CASE NO. 5:11-CV-00034-RLV<br><br>**DEFENDANT'S REPLY<br>MEMORANDUM** |

NOW COMES Defendant, Bernhardt & Strawser P.A. ("Bernhardt & Strawser"), and replies to Plaintiff Elizabeth Fisher's response to Bernhardt & Strawser's Motion to Dismiss. While the parties apparently disagree regarding the effect of certain correspondence sent by Bernhardt & Strawser to Plaintiff, they nonetheless agree that Congress enacted the Fair Debt Collections Practices Act ("FDCPA") because there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . ." 15 U.S.C. 1692(a). Plaintiff's Complaint, despite her recent brief, continues to fall far short of establishing any of the conduct which the FDCPA was enacted to stop, and dismissal of Plaintiff's claims therefore remains appropriate.

    A. Overshadowing Claim

Despite Plaintiff's best efforts, the fact remains that Bernhardt & Strawser's letters of April 21, 2010 and May 12, 2010 do not contain any threat of immediate litigation that contradicts, or could confuse a debtor about, the ability to dispute the debt. The overshadowing claim should therefore be dismissed.

As well explained by *Jenkins v. Union Corp.*, 999 F. Supp. 1120 (N.D. Ill. 1998), cited by Plaintiff, "[f]or a collection letter to threaten legal action . . ., it must communicate that a

lawsuit is not merely a possibility, but that a decision to pursue legal action is either <u>imminent</u> or <u>has already been made</u>." *Jenkins*, 999 F. Supp at 1136. In *Jenkins*, the collections agency's letters did not contain threats of litigation, as they only stated such things as "if legal action were taken" and "should such court action occur." *Id*. at 1138. Such "hypothetical terms" lacked the imminence required to constitute a threat. *Id*. Bernhardt & Strawser's letters were written in similar fashion.

Plaintiff, however, suggests that any letter from a law firm necessarily "ups the ante" and implies a threat of litigation. Plaintiff cites *Jenkins* in support of her argument, which noted that in close cases, "the letter's source can be determinative, especially if it purports to be from an attorney." *Jenkins*, 999 F. Supp. at 1137. Setting aside the fact *Jenkins* did not even involve letters from an attorney, the Northern District of California points out in *Abels v. JBC Legal Group, P.C.*, 428 F. Supp. 2d 1023 (N.D. Cal. 2005) that *Jenkins* does not go so far as Plaintiff wishes. The court there refused to extend "the holding of *Jenkins* to all attorney attempts to collect on a debt, as Plaintiffs advocate during oral argument, because a reading of the two cases relied on in *Jenkins* reveals that the language of the letter from an attorney <u>must still threaten litigation</u>." *Abels*, 428 F. Supp. 2d at 1028 (emphasis added).

One of the cases cited in *Jenkins* is *U.S. v. National Financial Services*, 98 F.3d 131 (4th Cir. 1996), a case relied on by Plaintiff for her contention that Bernhardt & Strawser is making a "hyper-literal" reading of the letters at issue. In *Nationwide*, the defendants argued they should not be liable under the FDCPA as they were merely relaying to the debtors that their clients might file suit. *Nationwide*, 98 F.3d at 138. The court refused to allow such "hyper-literal"

2

arguments to prevail and did not permit the defendants to circumvent the law under the guise of technical compliance. *Id*.

A key distinction exists between *Nationwide* and the present one, though, and it is the same reason that *Abels* refused to read *Jenkins* as broadly as Plaintiff. It is the language of the letters. In *Nationwide*, the letters included the following: "I have the authority to see that suit is filed against you in this matter . . . unless this payment is received in this office within five days . . .;" "I have filed suits and obtained judgments on small balance accounts just like yours. My authority to collect these judgments includes enforcement of judgments;" "Continued failure to pay will result in further collection activity;" and "Instructions have been given to take any action, that is legal, to enforce payment." *National Financial Services*, 98 F.3d at 134. These statements make litigation appear imminent, and the court in *Abels* is therefore correct to have refused to extend *Jenkins* as far as Plaintiff would have this court extend it. Thus, said the *Abels* court, "[a]bsent an actual threat of litigation in the content of the collection attempt, the mere fact that the Letters are from an attorney is insufficient to be a threat of litigation even to the least sophisticated debtor." *Id*. The court also stated that the "Ninth Circuit does not construe threats of litigation so broadly as to include debt collection attempts that are merely prudential reminders of the possible consequences of the failure to pay." *Id*. Such should be the case here, as Bernhardt & Strawser only informed Plaintiff of the possibility that the creditors may seek to invoke the attorney's fee provision in any future litigation that may be required. This is hardly imminent, and the fact the letters were from attorneys cannot convert such language into threats.

Nonetheless, Plaintiff cites *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996) in support of her position that because the letters were written on law firm letterhead, they must de facto threaten

3

litigation.  *Avila* does not further Plaintiff's cause in this regard, as facts that are not alleged in this case made the difference to the United States Court of Appeals for the Seventh Circruit.  In *Avila*, the defendant attorney never had any involvement in the actual matter, never reviewed the file, and never made any analysis of the facts.  *Avila*, 84 F.3d at 228-229.  Rather, a collections agency generated the letters on the law firm letterhead.  *Id*.  A non-attorney's use of an attorney letterhead, combined with an attorney "with no real involvement in the mailing of dunning letters to debtors," surely violates the FDCPA.  *Id*. at 228.  The court was then right to conclude that the attorney who signed the letters violated the FDCPA, "because his collection letters create the false and misleading impression that the communications were from an attorney when, in fact, they were not really from an attorney in any meaningful sense of the word."  *Id*. at 229.  Such is not the case here, nor has it even been alleged to be the case.

Curiously, Plaintiff cites *Garcia-Contreras v. Brock & Scott, PLLC*, 2011 U.S. Dist. LEXIS 34818 (M.D.N.C., March 31, 2011) as a recent North Carolina case in which the defendant, according to Plaintiff, undertook "the very conduct in which [Bernhardt & Strawser] partook."  [Plaintiff's Resp., p. 18].  In *Garcia-Contreras*, the defendant law firm opened its letter to the plaintiff with "This law firm has been retained by the above-reference creditor to file a lawsuit against you immediately for the collection of the debt referenced above."  *Garcia-Contreras*, 2011 U.S. Dist. LEXIS 34818 at *2 (emphasis added).  Bernhardt and Strawser can see how "we are suing you right now," without further explanation, might overshadow "you have thirty days in which to dispute the debt."  After all, according to *Jenkins*, a threat of litigation occurs if a decision about litigation is represented as being imminent or if it is represented that a

4

decision has already been made.  *Jenkins*, 999 F. Supp at 1136.  <u>Nothing</u> in Bernhardt & Strawer's letter is remotely equivalent.

Nor does *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997) assist Plaintiff. While the case neatly points out how a debtor may feel compelled to mail a payment before the expiration of a thirty day period, which contradicts the full thirty days allotted to dispute the debt, equally important is the actual demand sent to the debtor in that case.  There, the defendant informed the plaintiff that if the payment was not received within the thirty days, "a decision to pursue other avenues to collect the amount due <u>will be made</u>."  *Chauncey*, 118 F.3d at 518 (emphasis added).  That a decision to pursue other avenues <u>will</u> be made (*Chauncey*) is much different that informing a plaintiff that a lawsuit <u>might</u> be filed some time in the future (this case).  Bernhardt & Strawser's letters simply do not satisfy *Jenkins*' imminence requirement, and they therefore do not constitute a threat of litigation.  Absent any threat that can overshadow Plaintiff's rights to dispute the debt, Plaintiff's overshadowing claims must be dismissed.

B.  Alleged Violation of 1692c(a)(2)

Consistent with the underlying purposes of the FDCPA, to prevent abusive, deceptive, and unfair collections practices, § 1692c(a)(2) seems "designed to prevent repeated phone calls and letters directly to the debtor after the debt collector knows that the person to be represented by an attorney."  *Bieber v. Associated Collection Services, Inc.*, 631 F. Supp. 1410, 1417 (D. Kan. 1986)  Bernhardt & Strawser's March 10, 2011 letter simply does not rise to that type of conduct, making dismissal appropriate.

In *Bieber*, the defendant debt collector contacted the debtor, who promptly advised the defendant she was represented by counsel.  *Bieber*, 631 F. Supp. at 1417.  The defendant then

5

asked whether the debtor was planning on filing bankruptcy. *Id*. The question technically constituted correspondence with a represented debtor, as the defendant had just been informed of such representation, but the District of Kansas did not find a violation of § 1692c(a)(2). Instead, the court found the bankruptcy question to be a "legitimate business inquiry" that was not so extensive as to constitute the type of repeated communications prohibited by § 1692c(a)(2). *Id*. Such is the case here, as Bernhardt & Strawser, after being notified of the alleged representation, sent one letter to Plaintiff concerning <u>outstanding discovery</u>, nothing else. Ms. Dowd was also copied with the letter, so no *ex parte* communication with Plaintiff took place. Given the subject matter of the letter, Bernhardt & Strawser had a "legitimate court inquiry," to borrow from *Bieber*, which hardly seems to be the type of communication prohibited by § 1692c(a)(2).

Moreover, the United States District Court for the District of South Dakota refused to find a violation of § 1692c(a)(2) for correspondence that informed the debtor of the creditor's intent to file suit if the debt was not resolved. In *Pearce v. Rapid Check Collection, Inc.*, 738 F. Supp. 334 (D.S.D. 1990), the plaintiff gave two checks to a grocery store that were returned for insufficient funds. *Pearce*, 738 F. Supp. at 336. The debts were transferred to the defendant collections agency, which then sent demand letters to the plaintiff and sought criminal charges. *Id*. During the criminal proceedings, the plaintiff's attorney informed the defendant that he represented her and sought to resolve the debt, to no avail. *Id*. Because the plaintiff's credit union was supposed to have covered the checks, the plaintiff was ultimately acquitted in the criminal trial. *Id*.

Not receiving any satisfaction as part of the criminal process, the defendant then wrote to plaintiff's credit union, stating "Since the judge in this case agreed with Ms. Pearce, so we have

been informed, we feel that we have no other option but to bring civil action against Ms. Pearce and your credit union if this matter is not settled by October 1." *Id*. at 336-37. The letter was also sent directly to the plaintiff. *Id*. at 338. As the District of South Dakota pointed out, this was a technical violation of the FDCPA, as the plaintiff was represented. *Id*. "Under the facts, however, such violation is characterized as *de minimis*. It is not the type of conduct which the intent and purpose of the Act proscribes." *Id*.

Bernhardt & Strawser contend, for the reasons given in its memorandum in support of its Motion to Dismiss, that no violation of § 1692c(a)(2) has occurred. If a technical one may have been committed, the plain language of its March 10, 2011 letter clearly demonstrates such a violation is *de minimis.* Using *Beiber* and *Pearce* as guidance, no claim should be permitted to proceed based on such violation. Advising a defendant who represents herself in litigation that her discovery responses are overdue and that a motion to compel may be filed is simply not the type of correspondence proscribed by the FDCPA.

## CONCLUSION

For the reasons stated herein, and in Bernhardt & Strawser's original memorandum, Plaintiff's Complaint must be dismissed as a matter of law.

This is the 3rd day of June, 2011.

        **POYNER SPRUILL LLP**

        /s/ Joshua B. Durham
        Joshua B. Durham
        NC State Bar No. 25414
        One Wells Fargo Center
        301 S. College Street, Suite 2300
        Charlotte, NC  28202-4010
        Phone:  (704) 342-5250
        Fax:  (704) 342-5264
        Email:  jdurham@poynerspruill.com
        ATTORNEYS FOR BERNHARDT &
        STRAWSER, P.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of June, 2011, I electronically filed Defendant Bernhardt and Strawser, P.A.'s Reply Memorandum with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

    Holly Dowd
    Weisberg & Meyers, LLC
    409A Wakefield Drive
    Charlotte, NC  28209
    hdowd@attorneysforconsumers.com


This the 3rd day of June, 2011.


                                             /s/ Joshua B. Durham
                                             Joshua B. Durham