| | | |
|---|---|---|
| ELIZABETH FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| BERNHARDT AND STRAWSER, | ) | |
| PA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      **THIS MATTER** is before the Court on a Motion to Dismiss by Defendant Bernhardt and Strawser, P.A., filed on May 10, 2011, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging failure to state a claim for which relief can be granted. (Doc. 5.)

## I. BACKGROUND

      This action involves the alleged obligation of Plaintiff Elizabeth Fisher to pay a debt owed or due to a creditor other than Defendant. Defendant is a collection agency hired by creditors, GE Finance-Money Bank ("GE") and Citibank, to whom Plaintiff allegedly owed outstanding debts of $1,665.83 and $2,926.78, respectively. (Compl., Ex. 1.) Acting on behalf of the creditors, Defendant sent two letters to Plaintiff in an effort both to apprise Plaintiff of her rights in connection with repayment of the debts and to affect payment of the debts in a timely manner. *Id.*

      The first collection letter was sent directly to Plaintiff, on April 21, 2010, by Defendant on behalf of GE; the second letter was sent on May 12, 2010, by Defendant on behalf of Citibank. Both letters were printed on the official law-firm letterhead of Defendant and contained identical language stating the amount due, the potential consequences for non-payment within a

certain time frame, and the general rights reserved by Plaintiff. The language of the body of each

letter reads as follows:

> Re:     [Creditor]
>
>          Total Due: [Amount due]
>          My File: [File #]
>
> Dear Sir/Madam:
>
> I have been retained by [creditor] in regards to the balance you owe them on your account. Your contract with [creditor] provides for payment of the reasonable attorney fees if legal action is required to collect the balance due on your account. The attorney fee provision is authorized by North Carolina General Statues G.S. 6-21.2. Please be advised that if the outstanding balance due with my client, [amount due], is not received from you in my office within 30 days of the receipt of this letter, my client may seek to enforce the attorney fee provision of your [creditor] contract, all as provided by G.S. 6-21.2. Your check or money order should be payable to [creditor].
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a Judgment (if one has been entered) and mail you a copy of such verification or Judgment. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This letter is sent in an attempt to collect a debt and any information obtained will be used for that purpose.
>
>          Yours Very Truly,
>          [Signature]

(Compl., Ex. 1.)

On August 30, 2010, Defendant initiated a state-court collections action on behalf of

Citibank in Wilkes County District Court, where Plaintiff resided. (Doc. 6, Ex. 2.) During this

proceeding, Plaintiff appeared pro se. Subsequent to Plaintiff's appearance in state court, counsel

for Plaintiff notified Defendant, in a letter dated January 28, 2011, that she was representing

Plaintiff "regarding claims against [Defendant] pursuant to the Federal Fair Debt Collection

Practices Act," further demanding that Defendant "not contact [her] client for any reason" and to "direct all future contact and correspondence to [counsel for Plaintiff's] office." (Doc. 6, Ex. 5.)

Within two months of receipt of the notification letter sent by Plaintiff's attorney, Defendant mailed a March 10, 2011, letter directly to Plaintiff regarding overdue discovery responses in the aforementioned state-court proceeding, at which Plaintiff was initially representing herself pro se. (Compl., Ex. 2.) Defendant also copied Plaintiff's attorney on this communication. *Id*.

Plaintiff filed this action with the Court on March 18, 2011, and alleges two separate violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*: (1) Plaintiff alleges that Defendant overshadowed the statutorily required disclosures in its collection letters, thus violating 15 U.S.C. § 1692g(a) and (b); and (2) Plaintiff alleges that Defendant communicated with Plaintiff despite being represented by counsel, thus violating 15 U.S.C. § 1692c(a)(2). (Compl. ¶¶ 11, 12.)

## II. STANDARD OF REVIEW

A motion filed per the Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternatives Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), measured by whether it meets the standards stated in Rule 8 (providing generals rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted), *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, the courts require more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying Rule 8).

"Federal Rules of Civil Procedure 8(a)(2) requires only a 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The decisive standard is that the combined allegations, taken as true, must state a "plausible," not merely conceivable, case for relief. *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (citations omitted)). To have facial plausibility—a standard that lies between the outer boundaries of a probability requirement and the mere possibility of unlawful conduct—the pleading must contain factual content that permits the court, using its "judicial experience and common sense," reasonably to infer the defendant's liability. *Id.*

### III. DISCUSSION

Defendant moves to dismiss Plaintiff's claim for violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*, for failure to state a claim upon which relief can be granted. The Plaintiff alleges two distinct violations of the FDCPA: (1) that Defendant "overshadowed" the disclosures required under the statute, 15 U.S.C. § 1692g(a)–(b); and (2) that Defendant communicated with Plaintiff despite knowledge that she was represented by counsel, 15 U.S.C. § 1692c(a)(2).

Every FDCPA claim must establish three prima facie elements showing that (1) the plaintiff is a "consumer" within the meaning of the statute; (2) the defendant collecting the debt is a "debt collector" within the meaning of the statute; and (3) the defendant has violated by act or omission a provision of the FDCPA. *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411, 414 (E.D. Va. 1997). Both parties seem to agree that the first two elements are satisfied;

thus, the sole issue is whether Plaintiff has sufficiently pled the third element for each individual charge. Whether Plaintiff has shown, with facial plausibility, that the "defendant has violated by act or omission a provision of the FDCPA" must be evaluated against the context of the allegedly breached provision. Such evaluation will be performed below. *Id.*

A.  Count 1: Defendant Overshadowed the Required Disclosures (§ 1692g)

Plaintiff alleges that "Defendant overshadowed the statutorily required disclosures in its . . . dunning letters" in violation of section 1692g of the FDCPA. (Compl. ¶ 11.) The relevant disclosures as provided for in section 1692g(a) are as follow:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)      the amount of the debt;
> (2)      the name of the creditor to whom the debt is owed;
> (3)      a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4)      a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5)      a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Specifically, Plaintiff alleges that Defendant violated section 1692g(b), which states, in relevant part,  that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b).

1.  Question of Law or Fact

Defendant has denied any violation of section 1692g(b) and has asked this Court to rule on the issue as a matter of law. Plaintiff, however, urges that many courts have found such an overshadowing claim to be a question of fact and that this Court should follow suit. The Court agrees with Defendant: Where "the sole question is whether [Defendant] [has] violate[d] the 'overshadowing' prohibition, [the] question is treated as one of law in this circuit." *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 817 (M.D.N.C. 2011) (citing *McCormick v. Wells Fargo Bank*, 640 F. Supp. 2d 795, 798–99 (S.D.W. Va. 2009)).

This conclusion, of course, presupposes that the question of overshadowing is in fact "the sole question." *Id.* In the instant case, neither party disputes the facts as alleged, and the briefs' analyses center on one issue and one issue only: the dunning letter. *McCormick*, 640 F. Supp. at 799. No extrinsic evidence is alluded to, nor are there any disagreements on materially factual elements of the pleading; therefore, it seems the sole question is that of the interpretation of the letter's language. For the following reasons expounded upon below, this Court views the interpretation of such written instruments as a question of law; therefore, the Court's ruling on this issue will resolve the pending motion as to dismissal of the section 1692g claim. *Garcia-Contreras*, 775 F. Supp. 2d at 817.

The reasoning of *Garcia-Contreras*, in addressing the issue of "overshadowing" as one of law, is persuasive and in line with previous Fourth Circuit reasoning. *Cf. Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("[T]here is no such thing as the law of the district . . . [t]he law of stare decisis does not compel one district court judge to follow the decision of another."). It should also be noted that, whereas the Fourth Circuit has never directly ruled on this issue, the majority of the United States Courts of Appeal that have ruled on the

issue concur: the interpretation of potentially overshadowing language in a dunning letter is a question of law. *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 352 n.2 (3d Cir. 2000) ("We agree with the majority that whether language in a collection letter contradicts or overshadows the validation notice is a question of law.").

In classifying the language of a collection letter as "overshadowing" or "contradicting," it is logical to conclude that the methods of interpretation available to the court for determination of contractual language generally should carry over to interpretation of language such as that found in collective bargaining agreements and trust agreements, or, as in this case, collection letters. 15 U.S.C. § 1692g(b); *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) ("Our conclusion that the determination of whether a collection letter violates section 1692g is a question of law that we review *de novo* is buttressed by the rationale behind our *de novo* review standard for contracts and other written instruments, including collective bargaining agreements and trust agreements."); *see also Premier Bank, Nat. Ass'n v. Mosbacher,* 959 F.2d 562, 566 (5th Cir. 1992) ("Questions involved in our interpretation of the parties' contract are questions of law . . . entitled to a judgment as a matter of law."). Moreover, the FDCPA prescribes precisely what is to be achieved in the collection letter and what is to be expressly avoided. "Our role . . . is . . . the essentially negative one of examining whether a given notice comports with the requirements of the statute." *Miller v. Payco-Gen. Am. Credits*, 943 F.2d 482, 485 (4th Cir. 1991).

Plaintiff asks the Court to consider the sole deviant from the majority and adopt the stance of the Seventh Circuit by treating the issue of overshadowing as a matter of material fact for the jury. *See McMillan v. Collection Prof'l, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006) ("Because confusion is a fact-based question, dismissal is typically not available under 12(b)(6), which is appropriate only when there is no set of facts consistent with the pleadings under which the

plaintiff could obtain relief."); *cf. Wilson,* 225 F.3d at 352 n.2 ("We note that the Seventh circuit is the only court of appeals to have held that . . . overshadowing language is a question of fact which precludes dismissal under Fed. R. Civ. P. 12(b)(6)."); *Sheridan v. Nationwide Retirement Solutions, Inc.,* 313 F. App'x 615, 619 (4th Cir. 2009) ("[T]he first step for a court presented with a summary judgment motion based on a contract's interpretation is to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face."). However, like ambiguity, the classification of such language is an interpretative matter that does not turn on the credibility of extrinsic evidence.

Finally, the Court finds *McCormick* to be persuasive on an additional matter: the Fourth Circuit has given ample notice of its opinion of the interpretation of overshadowing language, despite not having addressed the issue squarely on a 12(b)(6) motion. *McCormick,* 640 F. Supp. 2d at 798. In both *Payco-General American* and *United States v. National Financial Services, Inc.,* 98 F.3d 131 (4th Cir. 1991), the Fourth Circuit upheld summary judgment decisions on section 1692g rulings, refusing to "hold that a jury should have examined the notice to determine if it complied with the FDCPA." *McCormick,* 640 F. Supp. 2d at 799. Although the two opinions arise from summary judgment motions, they establish that section 1692g questions need not be presented to the jury. Therefore, the issue of whether Defendant's letters overshadowed the statutorily required rights of the Plaintiff to validate her debt is one ripe for adjudication under a Rule 12(b)(6) motion.

2.  The Issue of Overshadowing

Having decided that the question of overshadowing is appropriate for adjudication at this stage, the Court now turns to evaluation of the letters themselves. Any such evaluation must be undertaken with care and caution as the subtleties of such an interpretation are not necessarily

obvious. *Payco-Gen. Am.*, 943 F.2d at 485 ("There are numerous and ingenious ways of circumventing § 1692g under a cover of technical compliance."). Plaintiff alleges that the collection letters "overshadow [and are] inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor" in that they (1) demand payment, (2) threaten litigation, and (3) confuse the consumer and induce her to overlook her right to dispute the debt. 15 U.S.C. § 1692g(b). For the following reasons, this Court disagrees and finds that, as a matter of law, Defendant did not violate section 1692g(b) in drafting its collection letters.[1]

  *a. Demand of payment.*

  First, Plaintiff relies in her brief on two aspects of the letters that she claims imply a demand for payment, thereby violating section 1692g. The first aspect is the placement of the phrase "Total Due" in the header of the document. The statute, however, provides in its very first requirement of any "Notice of Debt" that the debt collector "must send the consumer a written notice containing the amount of the debt." 15 U.S.C. § 1692g(a)(1). A plain and succinct statement informing the consumer of the amount allegedly due the creditor, whether disputed or not, is not itself a "demand for payment." Plaintiff relies on *National Financial Services* to convince the Court that construing the mention of a "Total Due" as anything less than a demand would be to "ask this court to adopt a hyper-literal approach which ignores the ordinary connotations and implications of language as it is used in the real world." *Nat'l Fin. Servs., Inc.*, 98 F.3d at 138. In *National Financial Services*, however, the "hyper-literal approach" asked of

---

  [1] Before moving forward to an analysis on the merits, it must be noted that "[s]ince the 2006 amendment to § 1692g(b) . . . courts have reached differing opinions as to whether such claims involving initial communications now fall under the new language in § 1692g(b), continue to fall implicitly under § 1692g(a), or both." *Garcia-Contreras*, 775 F. Supp. 2d at 813–14; *see also* Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109–351, § 802(c), 120 Stat. 1966 (2006). This Court, however, need not decide this issue today, as neither party has brought up any such concern. Therefore, the Court proceeds under the assumption that the 2006 amendment to section 1692g(b) extends to section 1692g(a) notices.

the court was to find the following language not to demand payment: "[I]t is now being processed by our NATIONWIDE COLLECTION AGENCY DIVISION to enforce IMMEDIATE PAYMENT from you. Notification is hereby given that the date assigned above is your deadline." *Id.* at 133 (emphasis in original). Clearly, there is a difference in context and "ordinary connotations and implications of language as it is used in the real world" between Defendant's statutorily required statement of the amount due and National Financial's request for "IMMEDIATE PAYMENT" as appearing in all capital letters. *Id.* at 133, 138 (emphasis in original).

In light of the stark contrast in tone between the alleged "demand" in the instant case and the "connotations" of a "request" for immediate payment in all capital letters, *National Financial Services* is of little relevant value to the instant case. Furthermore, because the brief statement of a "Total Due" seems to be in complete compliance with the statute, and appears with no embellishment or enhancement, the Court finds that this particular aspect of the letter does not "demand payment" as the Plaintiff contends.

Plaintiff also claims, more generally, that the body of the letter should be construed as a "demand" for payment. Again, Plaintiff cites only to *National Financial Services*—specifically, the conclusory statement that, "[w]hile defendants are literally correct, we do not believe that any consumer could reasonably believe that [the defendant] intended to provide a public service by informing [the plaintiff] about the basic functions and fee requirements of attorneys." *Id.* at 137. Plaintiff, however, ignores the facts of that case that led the court to reach its conclusion. The court in *National Financial Services, Inc.* relied on the following factual elements to find that no "reasonable" person would understand the letter to be anything less than a demand: (1) it "demanded 'immediate payment,'" (2) "the bold commanding type of the dunning text

overshadowed the smaller, less visible, validation notice printed on the back in small type and light grey ink, and (3) the letter "demanded payment in ten days." *Nat'l Fin. Servs.*, 98 F.3d at 139. Furthermore, Plaintiff ignores the standards against which the letter's language was compared in *National Financial Services*. In that case, the court referenced *Payco-General American* as providing the most adequate definition of "demanding language." *Id.* This standard requires far more than the actions of Defendant in this case to reach such a determination: "Screaming headlines, bright colors and huge lettering all point to a deliberate policy on the part of the collector to evade the spirit of the notice statute." *Payco-Gen. Am.*, 943 F.3d at 484.

Defendant's letters, unlike those in the cases on which Plaintiff relies, convey no request for immediate action, extended the payment period beyond that which it was required to establish, used consistent font sizes and colors, did not capitalize any demanding language, and placed the required disclosures in as prominent a location and context as the allegedly demanding language. On such findings, and in conjunction with the parameters as established by the Fourth Circuit, this Court cannot find that any demand for payment was apparent in the language of the letter.

   b. *Threat of litigation.*

The second way in which Plaintiff contends the letters induce the consumer to overlook her right to question the debt is that the letters threaten litigation. In support of her assertion, Plaintiff refers to *Garcia-Contreras* for the proposition that "although a debt collector has the right to sue a consumer during the statutory thirty-day period, it must tread carefully when leveraging this right in the initial collection letter to extract payment so as not to overshadow or contradict the consumer's validation rights." *Garcia-Contreras*, 775 F. Supp. 2d at 820–21. Further, Plaintiff contends that allusions to litigation, general statutes, and contract enforcement,

in addition to printing the letters on official law-firm letterhead, all create an impression that "conveys authority, instills fear in the debtor, and escalates the consequences," causing Plaintiff to "overlook" the second paragraph of the letter that outlines her reserved statutory rights. *Nat'l Fin. Servs., Inc.*, 98 F.3d at 137.

Courts, however, have interpreted the warning against litigious language to forbid only the threat of *imminent* or *pending* legal action, not the *possibility* of legal action. *See, e.g.*, *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998) ("[F]or a collection letter to threaten legal action . . . , it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made."). Additionally, courts have consistently held that the FDCPA's limitations should not be construed "so broadly as to include debt collection attempts that are merely prudential reminders of the possible consequences of failure to pay." *Abels v. JBC Legal Group, P.C.*, 428 F. Supp. 2d 1023, 1028 (N.D. Cal. 2005) (addressing *National Financial Services* and the pre-2006 FDCPA). Therefore, any allusions to the *potential* consequences of a failure to pay—including factual reminders of civil statutes or contractual terms, or potential legal action—cannot be construed to be an *imminent* threat of litigation rising to a level violative of the standard set out in *National Financial Services*.

In the context of Defendant's letters, it does not appear that any legal action is forthcoming; instead, the letters merely offer a "prudential reminder" that Plaintiff's fees may increase if she does not pay and the creditor decides to pursue legal action in the future. Because the letters contained permissive, forward-looking, and conditional language such as "[p]lease be advised that if," "may seek to enforce," and "if legal action is required," the Court holds that

Defendant's letters did not surpass the threshold of imminence required by law to constitute an overshadowing or confusing threat of legal action. (Compl., Ex. 1.)

       *c.   The least-sophisticated-customer standard.*

Finally, Plaintiff contends that the "least sophisticated consumer" standard applies and that, in the instant case, the least sophisticated consumer would be confused as to his or her rights. As to the application of the "least sophisticated consumer" standard, Plaintiff is correct: the Fourth Circuit has upheld the use of such standard. *Nat'l Fin. Servs., Inc.*, 98 F.3d at 136 ("[E]valuating debt collection practices with an eye to the 'least sophisticated consumer' comports with the basic consumer-protection principles."). Courts have generally interpreted the standard to mean that "a debt collector violates the Act if its communication is reasonably susceptible to an inaccurate reading of the required message" and have determined that its purpose is "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (internal quotations and citations omitted); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). The standard does, however, have its limits: "While protecting naïve consumers, the standard prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.*

Applied to the case at bar, Plaintiff maintains that Defendant's language—specifically, "If the outstanding balance . . . is not received from you in my office within 30 days of the receipt of this letter, my client may seek to enforce the attorney fee provision of your . . . contract"—would overshadow the least sophisticated consumer's understanding of her section 1692g(b) right to dispute the debt within thirty days. (Compl., Ex. 1); 15 U.S.C. § 1692g(b).

Plaintiff's contention is essentially that she was presented with two options: (1) decide to pay sometime *before* the thirty day window expires because *receipt* of payment must be made within 30 days; and (2) dispute the payment within thirty days. According to the Plaintiff, those two options are facially inconsistent. She maintains that the least-sophisticated consumer may read the letter to mean that, if she must send payment *before* the thirty day window expires in order to avoid litigation, then the thirty-day window to dispute the debt is shortened to the time period ending when payment is sent. When viewed in the context of current case law, however, this is an idiosyncratic and unreasonable reading of Plaintiff's options. *Clomon*, 988 F.2d at 1319. For the following reasons, the Court finds that the language is not inherently confusing or contradictory, and thus the claim for overshadowing must be dismissed.

In support of the proposition that the discrepancy in timing creates an unduly confusing obligation on behalf of the Plaintiff, and thus overshadows her right to dispute the claim, Plaintiff cites to a line of cases finding a similar time-period discrepancy to be confusing. *See, e.g.*, *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997); *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997); *Garcia-Contreras*, 775 F. Supp. 2d 808; *Larson v. JBC Legal Grp., P.C.*, 533 F Supp. 2d 290 (E.D.N.Y. 2008); *Swift v. Maximus, Inc.*, No. 04–216, 2004 WL 1576618 (E.D.N.Y. Jul. 15, 2004). The cases, however, are distinguishable on the grounds that each court further determined that a *demand* for payment or *threat* of litigation had been made. *Chauncey*, 118 F.3d at 519 ("The question before us is whether the dunning letter sent by defendant *demanding* payment within the thirty day debt validation period violates the FDCPA." (emphasis added)); *Bartlett*, 128 F.3d at 500 ("[T]he letter both *demands* payment within thirty days and explains the consumer's rights to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses." (emphasis

added)); *Garcia-Contreras*, 775 F. Supp. 2d ("[T]he court finds that the letter's *threats* can reasonably be interpreted by the least sophisticated consumer as a *demand for immediate payment*." (emphasis added)) ("Because the letter lacks any explanation of how the threats pressuring the consumer for immediate payment are consistent with the validation notice, the threats overshadow and contradict the notice."); *Larson*, 533 F. Supp. 2d at 306 ("Where an immediate demand for payment is included in a debt collection notice, the demand must be paired with transitional language informing the consumer that the demand does not override his or her rights under Section 1692g . . . ." (internal quotations omitted)); *Swift*, 2004 WL 1576618, at *5 (Although "[t]he sentence demanding payment does not, by itself, violate the FDCPA," such "demand for payment overshadows and conflicts with the validation notice on the reverse side of the letter."). In that this court has already found that no demands or threats are articulated in the letters, the cases on which the Plaintiff relies are distinguishable.

Therefore, in looking to similar cases not materially distinguishable from the case at bar, this Court finds the reasoning of *McCormick* to be persuasive. *McCormick*, 640 F. Supp. 2d at 798. By informing the Plaintiff of its *right* to attach legal fees to the debt owed *if* the creditor pursues legal action—not its *intention* to sue—Defendant states what is (1) "merely a fact under section 1692g(b) which allows debt collectors to continue with the collection of the debt during the 30-day period unless the consumer elects to exercise her section 1692(g)(a) rights," *McCormick*, 640 F. Supp. 2d at 799; (2) merely a fact under the contract entered into by and between Plaintiff and the original creditors (Compl., Ex. 1); and (3) "merely a fact" under N.C. Gen. Stat. § 6-21.2. It is instructive to observe the language at issue in *McCormick*, which is arguably more problematic, as compared to the Defendant's language: "**PLEASE BE ADVISED THAT DURING THE THIRTY (30) DAY PERIOD, THIS FIRM WILL NOT**

**DELAY OR CEASE WITH ITS COLLECTION OF THE DEBT.**" *McCormick*, 640 F. Supp. 2d at 799 (emphasis in original). Despite being written in all capital and bold letters, the *McCormick* court found the statement to be nothing more than a reminder of what the debtor could expect to happen. The Court finds sufficient parallels between the factually accurate reminders in Defendant's letter and those in *McCormick* to arrive at a similar conclusion. *Id.*

       *McCormick* relies, in part, on *Omaraie v. A. Alliance Collection Agency, Inc.*, No. 06-1727, 2007 WL 2409794 (N.D. Ill. Aug. 21, 2007), in reaching its decision, and the Court finds such reliance to be reasonable and informative. *Omaraie* stands for the proposition that, just because a letter mentions actions that will or may be taken within the thirty-day validation period, this does not necessarily make the letter confusing to the least-sophisticated consumer. *Id.* at *4. Instead, the court goes on to say that the letter will be confusing only "if [it] goes so far as to demand payment within a time period that cannot possibly exceed the thirty day Validation Period." *Id.* Because the letter in the instant case does not demand payment, *see supra* section III.A.2.a, this Court agrees with the courts in *McCormick* and *Omaraie* in finding that, by stating the mere fact that Plaintiff's debt may increase if the creditor pursues legal action, Defendant did not overshadow or contradict Plaintiff's right to validate her debt within thirty days.

       In summary, the Court finds that Defendant (1) did not demand payment, (2) did not threaten litigation, and (3) did not overshadow Plaintiff's right to validate the debt within thirty days. Therefore, Defendant's Motion to Dismiss should be granted on the first count, violation of section 1692g(b).

B.  Count 2: Improper Communication with a Debtor Represented by Counsel

Plaintiff also alleges that Defendant violated the FDCPA's mandate to cease communication with a debtor represented by counsel. The FDCPA provides such a prohibition in 15 U.S.C. § 1692c(a)(2):

> (a) Communication with the consumer generally
>
> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

Defendant's response to this allegation is threefold. First, it claims that Plaintiff was not represented by the attorney "with respect to such debt" because the communication with Plaintiff was only in regard to a lawsuit in which Plaintiff appeared pro se. 15 U.S.C. § 1692c(a)(2). Defendant contends that counsel for Plaintiff only notified Defendant that she was representing Plaintiff in regard to violations of the FDCPA. She did not, however, notify Defendant that she was representing Plaintiff in the state-court proceeding for recovery of the debt owed. Therefore, as Defendant sees it, it had no constructive knowledge that Plaintiff was in fact represented in the separate state recovery claim, which was the subject of the communication.

Second, Defendant claims that even if it had constructive notice of the representation, its communication with Plaintiff was not of the type the FDCPA intended to protect against, and thus any harm done Plaintiff would not be the result of abusive-collection procedures, but instead de minimis. *Beiber v. Assoc'd Collection Servs., Inc.*, 631 F. Supp. 1410, 1417 (D. Kan. 1986) ("[I]t seems c(a)(2) was designed to prevent repeated phone calls and letters directly to the

debtor after the debt collector knows that person to be represented by an attorney."); *Pearce v. Rapid Check Collection, Inc.*, 738 F. Supp. 334 (D.S.D. 1990) ("Under the facts, however, such violation is characterized as *de minimus*. It is not the type of conduct which the intent and purpose of the Act proscribes.").

Finally, the Defendant claims that it was required by the North Carolina Rules of Civil Procedure to contact the Plaintiff directly, as the correspondence was in connection with a case on which she was the only "attorney" on record, appearing pro se. N.C. Gen. Stat. § 1A-1, Rule 37(a)(2) ("[T]he discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery.").

1. Knowledge of Representation "In Connection with the Collection of Any Debt" and "With Respect to Such Debt"

The FDCPA forbids communication with a debtor "in connection with the collection of any debt" if the debtor is represented by counsel "with respect to such debt." 15 U.S.C. 1692c. Defendant raises an interesting issue in its Motion regarding the link between these phrases and the extent to which knowledge is to be imputed. As it contends, Defendant knew only that Plaintiff was represented by counsel insofar as it pertained to "claims against [Defendant] pursuant to the Federal Fair Debt Collection Practices Act, 15 U.S.C., et. seq. and/or State law." (Doc. 6, Ex. 5.) Because the representation allegedly did not extend to the collection of the underlying debt, Defendant asserts it had no reason to believe that Plaintiff had retained counsel for the state proceeding. In light of the statute and notification letter, the Court finds, however, that Plaintiff's allegations raise a plausible inference of Defendant's knowledge of her representation.

"As with all matters requiring statutory interpretation, we begin with the text. If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453 (6th Cir. 2013) (internal quotations and citations omitted). In this case, all that must be pleaded to state a plausible claim is that (1) the debt collector contacted the debtor (2) in connection with the collection of any debt (3) with knowledge that the debtor is represented by an attorney with respect to such debt and (4) with knowledge of the name and contact information of the attorney. *See* 15 U.S.C. § 1692c(a)(2). For the following reasons, the Court finds these elements to have been adequately alleged.

Regarding the first and second elements, the March 10, 2011, communication from Defendant to Plaintiff provided a clear and unambiguous statement: "The purpose of this communication is to collect a debt." (Compl., Ex. 2.) This adequately satisfies both elements by a plain reading of the language. As to the third element, that the consumer is represented by an attorney with respect to such debt, the Court is in agreement with both parties that "such debt" refers back to the antecedent "any debt" provided in the introduction to the subsections of the statute in section 1692c(a). The disagreement over whether the attorney adequately notified Defendant that her representation extended over both the FDCPA claims *and* the underlying debt claims can best be resolved by looking at the language contained in the notification letter.

In this notification letter, Plaintiff's attorney states, "We respectfully demand you not contact our client for *any* reason," and also, "You are hereby directed to cease and desist all collection activities until the alleged debt is verified." (Doc. 6, Ex. 5) (emphasis added). In a 12(b)(6) motion, all that is required to survive the motion is "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Here, the Plaintiff has done so in a sufficient manner with respect to the third *prima facie* element—the attorney asked Defendant not to contact her client for "*any*" reason and alluded to any and "all collection activities" in her letter of notification. (Doc. 6, Ex. 5.) Surely, a reference to "all collection activities" can, at the very least, provide notice of representation "in connection with any debt" to support a reasonable inference that Defendant knew, or should have known, that Plaintiff was represented by counsel in regard to the underlying debt. As to the fourth element, capacity to contact the attorney, Defendant copied the attorney on its correspondence, and thus the pleadings adequately support this element as well.

Therefore, because all of the *prima facie* elements of the violation have been adequately pleaded, Plaintiff has sufficiently stated a claim upon which relief can be granted as applied to the second count, violation of § 1692c(a)(2) of the FDCPA.

2. Communications Prohibited by the FDCPA

In light of the Supreme Court's ruling in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), more than "a formulaic recitation of the elements of a cause of action" is required to survive a 12(b)(6) motion; instead, the claim must have "facial plausibility," accomplished "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Applying this standard, it is appropriate for the Court to consider Defendant's claim that the alleged violation is de minimis and thus not compensable or remediable at law, thereby rendering the claim implausible to establish Defendant's liability.

Thus, the Court turns to the issue of de minimis communications under the FDCPA. In support of such a proposition, Defendant cites to two cases: *Bieber v. Assoc'd Collection Serv.,*

*Inc.*, 631 F. Supp. 1410 (D. Kan. 1986), and *Pearce v. Rapid Check Collection, Inc.*, 738 F. Supp. 334 (D.S.D. 1990). The Court, however, deems such reliance misplaced and finds that Plaintiff did plead a facially plausible claim under the standards of Rule 12(b)(6).

*Bieber* is distinguishable on multiple grounds. First, in that case, a plaintiff was on a telephone call with the debt collector when the debtor contemporaneously informed the debt collector that she was represented by counsel. Immediately following such notification, the debt collector asked one short question about whether the plaintiff was planning on filing for bankruptcy. *Bieber*, 631 F. Supp. at 1411. The *Bieber* court found such a communication technically to be a violation, but found that the FDCPA was "designed to prevent repeated phone calls and letters directly to the debtor after the debt collector knows that person to be represented by an attorney," and that this was not a repeated communication. *Id.* at 1417. Furthermore, the court in that case found that "while it probably would have been a better practice for the defendant to have hung up the phone after learning plaintiffs were represented by an attorney, this one additional question—a legitimate business inquiry—was not so extensive as to have been the kind of additional communication prohibited by subsection c(a)(2)." *Id.* In the case at bar, unlike in *Bieber*, the notification and violation did not occur in the same communication; the "additional" communication to which *Bieber* alludes is not of the kind perpetrated by the Defendant—a discrete communication beyond the one in which the collector was informed of representation. *Id.*

Furthermore, Defendant attempts to analogize *Bieber*'s "legitimate business inquiry" with its letter as a "legitimate court inquiry." *Id.* As the FDCPA makes clear, attempts to collect a debt—in this case litigation with the *sole purpose of collecting a debt*—are distinguishable from the question asked in *Bieber*.

For these reasons, the Court finds that Defendant's reliance on *Bieber* fails to establish that Plaintiff's claim for relief as facially implausible. *Id.* It next turns its attention to *Pearce*, the other case on which Defendant relies.

In *Pearce*, 738 F. Supp. at 335, and unlike the case at bar, the parties had submitted the case on stipulated facts and allowed the court to find all remaining conclusions of fact and law, based on such facts, in lieu of a jury trial. Additionally, the court in *Pearce did* find that a letter sent directly to the Plaintiff was "a technical violation of the Act," yet the Defendant relies on the court's reasoning that "such violation is characterized as *de minimus* . . . [and] is not the type of conduct which the intent and purposes of the Act proscribes." *Id.* at 338. This approach has been expressly rebutted in other jurisdictions. *See, e.g.*, *Muzuco v. Re$ubmitIt, LLC*, No. 11-62628, 2012 WL 3242013, at *3–4 (S.D. Fl. Aug. 7, 2012) (addressing 15 U.S.C. § 1692c(b)) ("This court declines to follow *Pearce*. . . . The statutory provision's meaning is plain . . . ."). This Court adopts the reasoning of the court in *Muzuco*.

Accordingly, Plaintiff has stated a sufficiently plausible claim for relief under the facts alleged, and Defendant's assertion that its result was of *de minimus* injury does not preclude such a finding.

3. State Law as a Defense to the Violation of Section 1692c(a)(2)

Finally, Defendant asserts that it was required by state law, specifically North Carolina General Statute § 1A-1, Rule 37(a)(2), to inform Plaintiff directly of its intention to confer with her before filing a motion to compel discovery. N.C. Gen. Stat. § 1A-1, Rule 37(a)(2). Therefore, the FDCPA, as Defendant contends, does not override state law, and thus Defendant is not liable for any violation thereunder. For a number of reasons, this Court finds such an assertion to be unpersuasive.

*Vitullo v. Mancini*, 684 F. Supp. 2d 747 (E.D. Va. 2010), upon which Defendant relies, has been differentiated by other courts declining to extend such a strict reading of the federal statute. Where the court in *Vitullo* asserted that "nothing in the FDCPA authorizes debt collectors to violate or fail to comply with state . . . law," *Id.* at 758, a closer and more accurate reading of the FDCPA will reveal that "although the FDCPA does not displace or annul state law, it does prevent the enforcement of state laws that are inconsistent with any provision of the FDCPA to the extent of the inconsistency," *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, No. 09–10159–MBB, 2012 WL 5878665, at *60 (D. Mass. Nov. 20, 2012) (internal quotations omitted). *McDermott* further maintains that *Vitullo* misconstrues the provision of the FDCPA providing that a debt collector may contact a debtor "with the express permission of court" to mean if "permitted by law." *Id.* at *59. This Court agrees with the court in *McCormick*; it is more accurate to state that absent "express permission of a court of competent jurisdiction," as allowed under section 1692c, no state law may be put forth as a defense if "inconsistent with any provision" of the FDCPA, pursuant to section 1692n, because it would be rendered unenforceable. 15 U.S.C. §§ 1692c & 1692n.

Therefore, the law to which Defendant cites being inconsistent with section 1692c(a)(2) and thus inapplicable by way section of 1692n, Plaintiff's allegations state a plausible claim for relief.

In sum, this Court determines (1) that Plaintiff has pleaded a prima facie case for Defendant's violation of section 1692c(a)(2), (2) that the claim is facially plausible, and (3) that Defendant has asserted no adequate defense to this claim. Therefore, Defendant's Motion to Dismiss the second count of its violation of section 1692c(a)(2) for improper communication with a consumer is denied.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss (Doc. 5) be **GRANTED** in part and **DENIED** in part. Plaintiff's claim of overshadowing a consumer's right to validate the debt within thirty days under the Federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692g, is hereby **DISMISSED**.

Signed: August 2, 2013

Richard L. Voorhees
United States District Judge